# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT GREENEVILLE

GUSTAVO VELEDIAZ GUADARRAMA,      )
                                  )
      Petitioner,                 )    Nos. 2:15-CV-203-JRG
                                  )            2:12-CR-37-JRG-DHI-2
v.                                )
                                  )
UNITED STATES OF AMERICA,         )
                                  )
      Respondent.                 )

## MEMORANDUM AND ORDER

Before the Court now is Petitioner's pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [Doc. 126][1]. The Government filed a response in opposition to Petitioner's motion [Doc. 130], and Petitioner filed a reply to the Government's response [Doc. 133]. Based upon its review of the petition, the Government's response, Petitioner's reply, and the record of the prior proceedings, the Court has determined that the files and records in the case conclusively establish that the Petitioner is not entitled to relief under § 2255; therefore, no evidentiary hearing is required, and the motion will be DENIED.

## I.      Background

Law enforcement agents conducted several controlled drug buys involving Petitioner from 2011 through 2012. *United States v. Guadarrama*, 591 F. App'x 347, 439 (6th Cir. 2014). On June 25, 2012, Petitioner was found guilty by jury trial of seven counts of an eight-count Indictment. Count 1 charged Conspiracy to Distribute 100 Kilograms or More of Marijuana, in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841(a)(1) and (b)(1)(B); Count 2 charged Conspiracy to Distribute 50 Grams or More of Methamphetamine, in violation of 21 U.S.C. §

---

[1] All docket entry references are to case number 2:12-CR-37

846 and 21 U.S.C. 841(a)(1) and (b)(1)(A); Count 4 charged Possession with the Intent to

Distribute a Quantity of Marijuana, in violation of 21 U.S.C. § 841(B)(1)(D); Count 5 charged

Possession of a Firearm in Furtherance of a Drug Trafficking Offense, in violation of 18 U.S.C. §

924(c)(1)(A); Count 6 charged Possession of a Firearm by An Illegal Alien, in violation of 18

U.S.C. § 922(G)(5)(A); Count 7 charged Possession of a Firearm by An Illegal Alien, in

violation of 18 U.S.C. § 922(g)(5)(A); Count 8 charged Possession of Ammunition by An Illegal

Alien, in violation of 18 U.S.C. § 922(g)(5)(A). *See Presentence Investigation Report ("PSR").*

Petitioner was sentenced to a total term of 180 months' imprisonment [Doc. 100].

Petitioner filed an appeal challenging the sufficiency of the evidence supporting all but the

conspiracy-to-distribute-methamphetamine conviction. *Guadarrama*, 591 F. App'x at 348. The

Sixth Circuit found the evidence sufficient to support all convictions appealed and affirmed

Petitioner's sentence on November 13, 2014. *Id.* at 349.

## II.    Standard of Review and Analysis

28 U.S.C. § 2255(a) provides that a federal prisoner may make a motion to vacate, set

aside, or correct his judgment of conviction and sentence on the ground that the sentence was

imposed in violation of the Constitution or laws of the United States, or that the federal district

court lacked jurisdiction to impose the sentence, or that the sentence is in excess of the maximum

authorized by federal law, or is otherwise subject to collateral attack.

To obtain relief under 28 U.S.C. § 2255, a petitioner must demonstrate "(1) an error of

constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of

fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*,

471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496-97 (6th

Cir. 2003)). He "must clear a significantly higher hurdle than would exist on direct appeal" and

establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

The petition sets forth two general grounds of collateral attack: ineffective assistance of counsel and actual innocence.

### A. Ineffective Assistance of Counsel

A petitioner alleging ineffective assistance must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1987). First, the petitioner must establish, by identifying specific acts or omissions, that counsel's performance was deficient and that counsel did not provide "reasonably effective assistance," *id.*, as measured by "prevailing professional norms," *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). Counsel's assistance is presumed to have been effective, and the petitioner bears the burden of showing otherwise. *Mason v. Mitchell*, 320 F.3d 604, 616-17 (6th Cir. 2003); *see also Strickland*, 466 U.S. at 689 (a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action might be considered sound . . . strategy" (internal citation omitted)).

Second, the petitioner must demonstrate "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691; *see also Smith v. Robbins*, 528 U.S. 259, 285-86 (2000). If a petitioner fails to prove that he sustained prejudice, the Court need not decide whether counsel's performance was deficient. *See United States v. Hynes*, 467 F.3d 951, 970 (6th Cir. 2006) (holding that alleged "flaws" in trial

counsel's representation did not warrant a new trial where the claims, even if true, did not demonstrate that the jury would have reached a different conclusion).

Petitioner articulates three theories of ineffective assistance, including counsel's alleged failure to: (1) move for suppression or dismissal based on Petitioner's "unconstitutional arrest"; (2) timely file dispositive pre-trial motions to suppress; and (3) object to perjury by government witness Agent Allen Pack during trial [Doc. 126]. [2]

### 1. Unconstitutional Arrest

Petitioner claims ineffective assistance of counsel for failure "to move for suppression or dismissal based on [Petitioner's] unconstitutional arrest" [Doc. 126]. Petitioner argues that the affidavit supporting his arrest warrant lacked probable cause and was stale, thus making the arrest warrant invalid [*Id*. at 5].

Failure to file a suppression motion may be ineffective assistance, *Kimmelman v. Morrison*, 477 U.S. 365 (1986); however, a failure to file a suppression motion is not ineffective assistance per se. *Id*. In order to meet his burden of proving ineffective assistance of counsel for not filing a motion to suppress, Petitioner must first show that counsel's failure fell below the objective standard of reasonableness, and he "must also prove that his [suppression] claim is meritorious." *Id*. at 374-37. Conversely, if such a motion would fail, counsel may not be criticized for having accurately assessed his client's chances of successfully challenging the [arrest]." *Worthington v. United States*, 726 F.2d 1089, 1093 (6th Cir. 1984). In other words,

---

[2] The Government asserts that Petitioner's suggestion that he is entitled to suppression of the statements that he made to law enforcement officers and the evidence obtained from the search of his home is procedurally defaulted because Petitioner failed to raise any such Fourth Amendment claim on direct appeal [Doc. 130 p. 7]. Therefore, the Government argues, Petitioner is unable to seek direct Fourth Amendment relief in this § 2255 motion [*Id*.].

The Court finds that Petitioner has properly presented his claim as an ineffective assistance of counsel argument rather than a stand-alone Fourth Amendment assertion, and therefore, the Court will address the claims on the merits.

4

"whether trial counsel . . . acted incompetently . . . depends upon the merits of the . . . question."
*Id*.

Petitioner's argument attacks the length of time between when the officer received information that supported probable cause and when the information was actually employed to support probable cause [*Id*.].  Petitioner asserts that "the only law enforcement brokered deal to purchase drugs at [Petitioner's] apartment was on [May 23, 2011], and the last controlled purchase involving [Petitioner] at another location in Jefferson City, Tennessee was on [June 2, 2011] [Doc. 126 at. 5].  Petitioner argues that the arrest warrant was not procured until about ten months later; thus, any possible probable cause to arrest Petitioner at his apartment on the basis of drug activity would have been "very stale" [*Id*.].  Petitioner argues that due to lack of probable cause and staleness, the arrest warrant was invalid, and that since the warrant was invalid, the arrest was warrantless and illegal, requiring suppression of all fruits of the arrest, including any statements made by Petitioner and any evidence seized from his apartment [*Id*.].

The Fourth Amendment prohibits "unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. Amend. IV.  Although Petitioner correctly states that in order to "establish probable cause to obtain a warrant, the affidavit may not employ 'stale' information . . ." [Doc. 126 at 4], the Court finds that the case law provided by Petitioner pertains specifically to search warrants rather than arrest warrants.  Here, law enforcement officers arrested Petitioner pursuant to an arrest warrant.  The probable cause provided to procure Petitioner's arrest warrant was based on prior controlled purchases of methamphetamine from Petitioner. *Guadarrama*, 591 F. App'x at 349.

It is true that in the context of drug crimes, information used to obtain a search warrant goes stale very quickly "because drugs are usually sold and consumed in a prompt fashion." *United States v. Frechette*, 583 F.3d 374, 378 (6th Cir. 2009). However, with an arrest warrant, the information validating probable cause is not the drugs themselves, but the information gained by the confidential informant, and such information does not go stale. Also, there is no statute of limitations for arrest warrants. An arrest warrant may remain outstanding until the defendant is apprehended.

Any motion to suppress or dismiss brought by Petitioner's counsel on this basis would have failed, and therefore, counsel was not ineffective for failing to challenge Petitioner's arrest.

### 2.    Pre-Trial Motions to Suppress

Additionally, Petitioner claims ineffective assistance of counsel for failure to timely file pre-trial motions to suppress [*Id.*]. Petitioner states that his counsel's failure to file timely pre-trial motions under Rule 12(e) deprived Petitioner of a proceeding to which he was necessarily entitled, thus presumptively prejudicing him, regardless of the outcome of the motion [*Id.*].

According to the Government's response, at Petitioner's initial appearance, the Court set May 22, 2012 as the pre-trial motions deadline and scheduled a final pretrial conference for May 30, 2012 [Doc. 130 at 4]. On May 22, 2012, Petitioner's counsel requested that the motions deadline be extended until May 25, 2012 [*Id*]. The Court granted the extension request, but only reset the motions deadline to 5:00 p.m. on May 24, 2012, explaining that the earlier deadline was needed so as to afford the Government adequate time to respond to any motions filed by Petitioner [*Id.*]. On May 25, 2012, Petitioner's counsel filed several pre-trial motions, including motions to suppress Petitioner's statements and the evidence obtained from the search of his

residence [*Id*.]. The Court ultimately concluded that those motions were untimely and denied them for that reason [*Id*.].

The Government states that Petitioner failed to show that the statements and evidence he faults counsel for not timely seeking to suppress were actually subject to suppression [Doc. 130 at 9]. The Government contends that the record indicates that those statements and evidence were obtained lawfully and as such, Petitioner has failed to meet his burden of demonstrating prejudice under *Strickland*, and his claims should be denied. As noted above, failure to file (or timely file) pre-trial motions may be ineffective assistance of counsel but these claims turn on whether the untimely suppression motion would have been successful.

### a. Motion to Suppress Statement Dated April 4, 2012

A motion to suppress filed on Petitioner's behalf sought to exclude "a statement obtained by law enforcement on or about April 4, 2012 from [Petitioner]" [Doc. 33 at 1]. The motion alleges that Petitioner was in the custody of law enforcement officers when this statement was obtained and the statement was not made knowingly, intelligently, freely, or voluntarily because Petitioner does not speak, read, or understand English [*Id*].

In his § 2255 motion, Petitioner alleges that the interrogating agent never advised him that he could refuse to consent to a search of his residence or that he had the option of refusing to sign the *Miranda* rights waiver [Doc. 126 at 8-9]. Petitioner claims that he "explicitly asked" if he was able to get a lawyer but Agent Pack "deceived" him by stating that "if he just signed the consent form he would be ok and did not need a lawyer" [*Id*.at 8]. According to Petitioner, Agent Pack threatened him and insisted that he "had to sign the waiver" and "had to tell the agents the truth" [*Id*.at 9]. Petitioner also claims that he was "vastly outnumbered by FBI agents screaming at him and threatening him with guns drawn" [*Id*. at 8].

In response, the Government states that nothing in the record suggests that Petitioner's consent was anything other than voluntary, and Petitioner provides no evidence in his motion to support his assertion that the consent form should be suppressed [Doc. 130 at 8].

According to the record, after Petitioner was placed in the backseat of a patrol car, Agent Allen Pack and Agent Smith interviewed Petitioner, *in Spanish*, inside the vehicle. *Guadarrama*, 591 Fed. App'x. at 349. Agent Pack advised Petitioner of his *Miranda* rights by reading directly from a standard FBI form, written in Spanish, which Petitioner signed. *Id*. After speaking with Petitioner for a few minutes, Agent Pack requested Petitioner's consent to search his residence using another standard Spanish-language FBI form, which Petitioner also signed. *Id*.

The Sixth Circuit opinion explains that during their conversation, Agent Pack specifically asked Petitioner about Bedroom Number 2. *Id*. Petitioner said that the room had been rented out to a person named Felipe but that Felipe had not returned to the apartment for about a month. *Id*. Prior to Felipe, the room belonged to Petitioner's brother Alfredo. *Id*. Petitioner told Agent Pack that the room contained approximately thirty pounds of marijuana, a shotgun belonging to Alfredo, and a .25 caliber semi-automatic pistol belonging to Petitioner. *Id*. Petitioner said that he had access to the room but that the marijuana belonged to Flaco and that Petitioner was storing Flaco's marijuana in the apartment in exchange for help with the bills. *Id*. Petitioner admitted that he had occasionally sold small quantities of the marijuana himself. *Id*.

The Court finds that the motion to suppress statements made on April 4, 2012 would have been meritless because the record clearly indicates that the statements were made knowingly, intelligently, freely, and voluntarily by Petitioner. The fact that Petitioner was not explicitly advised of his right to refuse consent does not automatically deem Petitioner's consent invalid. *United States v. Justice*, 464 F.App'x 448, 453 (6th Cir. 2012). "While knowledge of the right to

8

refuse consent is one factor to be taken into account, the Government need not establish such knowledge as the *sine qua non* of an effective consent." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). "Rather, it is only by analyzing all the circumstances of an individual consent that it can be ascertained whether in fact it was voluntary or coerced." *Id*. at 233.

Consent must be proven by clear and positive testimony and must be unequivocal, specific, intelligently given, uncontaminated by any duress and coercion. *United States v. Williams*, 754 F.2d 672, 674-76 (6th Cir. 1985). Moreover, in a warrantless search, the government bears the burden of proving consent. *United States v. Jones*, 846 F.2d 358 at 360. "This burden is, of course, heavier where it appears that the owner is illiterate or a foreigner who does not readily speak and understand the English language." *Kovach v. United States*, 53 F.2d 639 (6th Cir. 1931); *see also United States v. Hernandez*, 913 F.2d 1506, 1510 (10th Cir. 1990) (explaining that "language barriers may inhibit a suspect's ability to [act] knowingly and intelligently"). Officers can eliminate any question about consent by reading a translation of the consent aloud to an arrestee whose first language is not English. *United States v. Acosta-Tapia*, 69 Fed. App'x. 885, 887 (9th Cir. 2003). In this case, Petitioner was read all consent forms in Spanish, which is the language he claims to be able to read, write, and understand.

As for Petitioner's allegations that he was outnumbered by FBI agents who had their guns drawn and therefore felt forced into consenting to a search of his apartment, he offers no evidence indicating that agents had guns drawn during the time that consent was requested, thus, no evidence of overt or covert threats or pressure to exact Petitioner's consent. *See United States v. Blakeney*, 942 F.2d 1001, 1015 (6th Cir. 1991); *Gorman v. United States*, 380 F.2d 158, 164 (1st Cir. 1967) (Before Petitioner was asked to consent to the search, all guns had been holstered and Petitioner was advised of his *Miranda* rights, putting him on notice that he could refuse to

cooperate.); *United States v. Cepulonis*, 530 F.2d 238, 244 (1st Cir. 1976); *United States v. Kimball*, 741 F.2d 471, 474 (1st Cir. 1984) (Notwithstanding the inherently unnerving effect of having numerous officers arrive at one's door with guns drawn, Petitioner was no newcomer to law-enforcement encounters. Thus, we may fairly presume that he was "less likely than most to be intimidated by the agents' show of force.). Even if officers had their guns drawn and were screaming and threatening him when they entered petitioner's apartment, petitioner had been removed from the apartment and was in the backseat of a patrol car when his *Miranda* rights were read and waived and he consented to the search of his residence and nothing suggests that his Miranda waiver was not voluntary. This Court concludes that Petitioner was not overborne, nor was his capacity for self-determination critically impaired.

Accordingly, the Court finds nothing in the record to support Petitioner's new found allegation that duress or coercion was used in obtaining consent. Moreover, Petitioner has failed to prove through his motion and reply that the motion to suppress his statements would have been successful. As illustrated above, the record contains sufficient information from which the Court can find that a suppression motion would have been meritless.

### b.  Motion to Suppress Evidence Obtained from Apartment

A motion to suppress filed on Petitioner's behalf requested to exclude "any and all evidence obtained as a result of a search of 1011 East Mount Castle No. 66, Jefferson City, Tennessee on or about April 4, 2012" [Doc. 32 p. 1]. In the motion to suppress, Petitioner claims that "law enforcement conducted a warrantless search" which resulted in "several items of evidence . . . seized" [*Id.*]. Petitioner argues that he did not "knowingly, intelligently, and voluntarily" give consent to search his apartment, and therefore, believes that the evidence was unlawfully obtained [*Id.*].

10

Petitioner states that although law enforcement agents had an arrest warrant that allowed them to enter the apartment, once the officers found and arrested Petitioner the arrest warrant did not authorize any further search of the apartment, [Doc. 126 p. 7]; however, law enforcement "proceeded to search [Petitioner's] entire apartment" based on the asserted need of conducting a protective sweep [*Id.*]. Petitioner claims that during the course of the protective sweep, agents thoroughly searched the entire apartment, including inside kitchen cupboards and behind locked doors in which Petitioner argues he specifically informed agents was a room rented out to another person for which he did not have access [*Id.*]. Furthermore, Petitioner claims that even if his consent to search the apartment is found to be valid, the consent was obtained subsequent to the apartment search and breach of the locked bedroom and the record is devoid of any testimony of timely consent from a person or entity with actual authority [*Id.*].

The record indicates that after Petitioner was found in his apartment the agents conducted a sweep of the residence and encountered "Bedroom Number 2," a locked room in the apartment. *Guadarrama*, 591 Fed. App'x. at 349. They asked for a key to the room, but because there was "no definitive answer as to where a key would be" or whether Petitioner possessed one, Agent Smith breached the door to "clear" the room of any threats. *Id.* [3]

Thereafter, based on Petitioner's consent to search the apartment, a group of agents returned to the apartment. *Id.* at 350. The agents testified regarding the search at trial, and the Government also introduced several photos of Bedroom 2. *Id.* Agents observed a Winchester

---

[3]     Petitioner seeks an evidentiary hearing on many of these issues asserting his own contradictory version of the facts. However, he has submitted no affidavit, not even his own, in support of his version of the facts. Nevertheless, the Court might be inclined to conduct an evidentiary hearing since no testimonial record was made previously since the motions to suppress were untimely. In this case, however, the Court does have a record of the testimony of the agents from the trial and that credible testimony is sufficient for the Court to rule on the issues raised without benefit of an evidentiary hearing.

Model 37A 20-guage shotgun and a Raven Arms .25 caliber semi-automatic pistol. *Id*. Both weapons, and ammunition for the handgun, were found in the closet, the shotgun standing up in the corner and the handgun on the top shelf. *Id*. Agents also found approximately sixty pounds of marijuana in Bedroom 2. *Id*. The marijuana was compressed into bricks and packaged in "12 pack coke cartons, [an] herbal life box, a black duffle bag . . . stuffed in a cooler, [and] some of it was broken out for resale in Ziploc baggies." *Id*. Agent Todd Coleman testified that some of the marijuana was discovered "directly under the nightstand" along with a digital scale that would usually be used to measure out drug quantities. *Id*. Furthermore, agents found a trash bag containing discarded shrink-wrapping that was consistent with the shrink-wrapping found on the marijuana bricks in the room. *Id*. The agents also found a total of $12,000 in cash in Bedroom Number 2, of which $7,000 was found on the top shelf of the closet, next to the pistol. *Id*.

It is well-settled that arrest warrants are not search warrants. *Steaglad v. United States*, 451 U.S. 204, 212-13 (1981). Thus, the Supreme Court has identified two types of warrantless protective sweeps of a residence that are constitutionally permissible immediately following an arrest. The first type allows officers to "look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Maryland v. Buie*, 494 U.S. 325 at 334 (1990). The second type of sweep goes "beyond" immediately adjoining areas but is confined to "such a protective sweep, aimed at protecting the arresting officers[.]" *Id* at 334-35. The first type of sweep requires no probable cause or reasonable suspicion, while the second requires "articulable facts which , taken together with the rational inference from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id*. at 334. The Supreme Court also "emphasize[d] only to a cursory inspection of those spaces where a person may be found" and

should last "no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises." *Id*. at 335-36.

Here, the Court finds that the protective sweep conducted by officers after the arrest of Petitioner was valid and legally executed. It is reasonable to conclude that Petitioner had apparent authority over Bedroom Number 2, and based on the record, which states that there was no definitive answer by Petitioner as to where a key to Bedroom Number 2 would be, officers did not act unreasonably in breaching the door to clear the room of any potential threat. Therefore, the initial breach of Bedroom Number 2 was valid and legally executed. Once cleared of potential harm, the Court finds that the officers obtained valid consent to speak with Petitioner, followed by valid consent to search his apartment.

Because the information provided in the record supports a valid seizure of evidence from Bedroom Number 2, the Court finds Petitioner's motion to suppress evidence obtained from his apartment would not have been successful. Petitioner failed to meet his burden of demonstrating prejudice under *Strickland*, and therefore failed to prove his counsel was ineffective.

### 3.     Failure to Object to Government's Witness Agent Allen Pack (Alleged Perjury)

Petitioner alleges that his counsel was ineffective for failing to object to perjury by Government witness Agent Pack during trial. Specifically, Petitioner argues that a new trial is necessary because the Government knowing used false testimony when Agent Pack testified that Petitioner admitted to having access to the locked guest bedroom [Doc. 126 p. 9]. Petitioner called Agent Pack's statement "carefully crafted Government perjury to attribute all of the contraband found" in the guest bedroom to Petitioner [*Id*.]. Petitioner claims that he instead told Agent Pack that he was renting out the room and did not have a key to enter the locked room [*Id*.]. Petitioner asserts that the police broke down the door of the locked bedroom to gain access

because Petitioner did not possess a key, thus confirming that Petitioner never told Agent Pack that he had access to the locked bedroom [*Id*.].

In response, the Government states that Petitioner "offers no evidence to support his claim that Agent Pack's testimony was false, let alone knowingly so" [*Id*.]. The fact that Petitioner did not have a key to that bedroom on his person at the time of his arrest does not mean that he did not actually possess such a key or have access to such a key [*Id*.]. The Government argues that Petitioner has not demonstrated that Agent Pack actually committed perjury at trial nor has he demonstrated that counsel would have any reason to believe that Agent Pack was committing perjury [*Id*.].

Although Petitioner alleges there to be a material factual discrepancy as to whether or not he told Agent Pack he had access to the locked guest bedroom, the Court finds that the truth of the matter does not affect its decision on counsel's effectiveness when examining the witness during trial.

Although a failure to properly examine, or cross-examine a witness could form the basis for a finding of ineffective assistance, *Jackson v. Houk*, 687 F.3d 723, 742-43 (6th Cir. 2012), such decisions typically are not subject to second guessing and are entitled to be presumed sound trial strategy. *See United States v. Friedman*, 1993 WL 386797, *3 (6th Cir. Sept. 30, 1993) ("[T]actical decisions must be particularly egregious before they will provide a basis for relief.") (citing *Martin v. Rose*, 744 F.2d 1245, 1249 (6th Cir. 1984)); *see also Blackmon v. White*, 825 F.2d 1263, 1265 (8th Cir. 1987) ("[T]he courts must resist the temptation to second-guess a lawyer's trial strategy; the lawyer makes choices based on the law as it appears at the time, the facts as disclosed in the proceedings to that point, and his best judgment as to the attitudes and sympathies of judge and jury.").

14

*Strickland* instructs that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S at 690. Petitioner has not shown there was no investigation of this witness; that any investigation was not thorough; or that counsel's strategic choice was not reasonable. *See Nichols v. Heidle*, 725 F.3d 516, 543 (6th Cir. 2013); *Webb v. Mitchell*, 586 F.3d 383, 395 (6th Cir. 2009) (observing the petitioner had failed to "overcome 'the strong presumption' that his trial counsel conducted a reasonable investigation") (citing *Campbell v. Coyle*, 260 F.3d 531, 553 (6th Cir. 2002)).

Here, Petitioner did not overcome the strong presumption that counsel's claimed misstep "might be considered sound trial strategy*." Strickland*, 466 U.S. at 689. Even Petitioner's claim that he informed his counsel that he "knew that Pack committed perjury on the witness stand ...", does not mean counsel did not make a reasonable strategic decision as to the best method to use in cross-examining this witness. *See Debruce v. Commissioner, Alabama Dept. of Corrections*, 758 F.3d 1263, 1269 (11th Cir. 2014) (The state court did not unreasonably decide, under *Strickland,* that counsel did not give ineffective assistance by failing to cross-examine a witness with a transcript of his interrogation.).

Given the difficulty encountered by a petitioner in challenging counsel's tactical decisions, the Court finds no ineffectiveness on behalf of counsel regarding his decision not to object to alleged perjury by Agent Pack during trial.

## B. Actual Innocence

Petitioner further seeks § 2255 relief on the ground that he is innocent of all of the charges other than the methamphetamine conspiracy offense [Doc. 126 p. 10]. However, the Government cites the Sixth Circuit opinion of *Guadarrama*, 591 F. App'x at 352-55 and states

that Petitioner's challenge to the sufficiency of the evidence supporting these convictions was expressly rejected by the Sixth Circuit on direct appeal [Doc. 130 p. 6].

A § 2255 motion is not a substitute for a direct appeal and cannot do service for a direct appeal. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *United States v. Frady*, 456 U.S. 152, 167-68 (1982); *United States v. Timmreck*, 441 U.S. 780, 784 (1979); *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003); *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996). Petitioner cannot use a § 2255 motion to relitigate the same issues that were fully, fairly presented and decided in his direct appeal to the Sixth Circuit Court of Appeals. Issues which are fully, fairly presented and considered on direct appeal may not be relitigated in a § 2255 proceeding absent exceptional circumstances or an intervening change of the law. *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999); *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999); *Oliver v. United States*, 90 F.3d 177, 180 (6th Cir. 1996); *DuPont v. United States*, 76 F.3d 108, 110-11 (6th Cir. 1996).

The Government argues that Petitioner has not identified any such circumstances, but rather reiterates arguments which the Sixth Circuit has already rejected [Doc. 130 p. 6]. Moreover, the Government argues that Petitioner has failed to demonstrate that he is factually innocent of the offenses of which he was convicted [*Id.*]. In his reply, Petitioner contends that his actual innocence was never properly litigated before the Sixth Circuit because the Sixth Circuit failed to analyze controlling authority [Doc. 133 p. 1].

The Court finds that Petitioner has failed to identify any intervening controlling authority or exceptional circumstances which would justify relitigation of counts 1, 4, 5, 6, 7, and 8. Courts in the Sixth Circuit have repeatedly held that the sufficiency of the evidence to support a conviction may not be reviewed on collateral review in a § 2255 proceeding. *United States v.*

*Osborne*, 415 F.2d 1021, 1023 (6th Cir. 1969). The Sixth Circuit opinion presents overwhelming proof that Petitioner's challenges to counts 1, 4, 5, 6, 7, and 8 should be denied and his convictions affirmed.

### III. Conclusion

For the reasons set forth herein, the Court holds that petitioner's conviction and sentencing were not in violation of the constitution or laws of the United States and his motion to vacate, set aside or correct sentence will be DENIED.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F. 3d 466 (6th Cir. 2001). The District Court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. at 467. Each issue must be considered under the standard set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473, 120 S. Ct. 1595 (2000). *Id.*

Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." After reviewing each of Petitioner's claims, the Court finds that reasonable jurists could not conclude that petitioner's claims are adequate to deserve further review. Because petitioner has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue.

A separate judgment will enter.

s/J. RONNIE GREER<br>
UNITED STATES DISTRICT JUDGE